## THE PEOPLE EX REL. BENTLEY ET AL. v. LE FEVRE ET AL.

1. CONSTITUTIONAL LAW—TERM OF OFFICE OF DISTRICT JUDGES.

Judges of the district court who are elected at the regular sexennial election hold their offices for the term of six years, and those elected to fill a vacancy hold only for the unexpired term.

2. CONSTRUCTION.

Each provision of the constitution, both original and amended, should, if possible, be so construed as to avoid conflict.

3. STARE DECISIS.

The maxim *stare decisis* is applicable in its fullest extent only where property rights are involved; yet, when the doctrine of the case has so long prevailed as to become the recognized law of the land, and has been acted upon by the different departments of state, it should, ordinarily, be accepted as a correct interpretation of the law.

4. CONSTRUCTION.

Constructions of the constitution by the legislative and executive departments of the government, particularly by the legislature, when made contemporaneously with the adoption of the constitution, or soon thereafter, weigh strongly with the courts.

### Proceedings in the Nature of Quo Warranto.

IN 1887, under the authority of amended section 14 of article 6 of the constitution, the general assembly increased by one the number of judges in the second judicial district of this state. The office was provisionally filled by the appointment thereto by the governor of Platt Rogers, who held the office until the next general election, in November, 1887, when W. S. Decker was elected as his successor.

At the general election in 1888, Judge Decker was again elected to such office for a full term, qualified and held the same until December, 1890, when he resigned.

To fill the vacancy caused by that resignation the governor appointed the relator Bentley, who held the office until the general election in 1891, when Judge Bentley was elected as his own successor.

In 1889 the general assembly again increased the number of judges of this district by providing for two additional judges, and T. B. Stuart and O. B. Liddell were appointed by the governor to hold such offices until the next general election, at which regular election, in November, 1889, the relators Rising and Graham were elected as successors to Stuart and Liddell, and entered upon the discharge of the duties of their office early in the following December.

In 1891 the legislature provided for one more judge for this same district, and Alvin Marsh held the office by appointment until the November election in 1891, when the relator Burns was elected and qualified as the successor of Judge Marsh.

At the regular election in 1894 five judges were elected in this judicial district,—the four respondents and George W. Allen. The four relators held the office of district judge continuously from the time of their election as aforesaid until the 8th day of January, 1895, which is the day fixed by statute for the beginning of the term of office of all state, district and county officers elected for a regular term at the previous general election, upon which day the respondents, as it is alleged, ousted the relators from such said office, and now are holding such office, and performing the duties and receiving the salary thereof.

This is an action in the nature of *quo warranto* to determine the rights of relators to the office of judges of the district court of the second judicial district of the state. The question to be determined is the tenure of office of a district judge elected at a time other than at the election which will, in this opinion, be termed the regular sexennial election for district judges ; and, as is the case with three of the relators, the tenure of office of district judges elected thereto at the first election held under the provisions of an act of the legislature, passed under the authority of amended section 14 of article 6 of the constitution, creating a new judicial district and providing for a judge therein, or providing for additional judges in an old or existing district.

The issue is well defined, and involves the proper interpretation and construction of the constitutional provisions which are copied below. The question may be differently stated in this way : Does a district judge, so elected, hold his office for the full term of six years, or only until the next succeeding sexennial election and until a successor is elected and qualified ?

Section 12 of article 6 of the constitution, as it was adopted in 1876, divided the state into judicial districts, "in each of which there shall be elected by the electors thereof, one judge of the district court therein, *whose term of office shall be six years.*"

By section 13 the number of the original districts was fixed at four, "until otherwise provided by law."

By section 14 it was provided that the general assembly may, after the year 1880, but not oftener than once in six years, increase the number of the judicial districts and the judges thereof.

In 1886 sections 12 and 14 were amended;—section 14 by providing that the general assembly, by a two thirds vote of each house, may at any session increase or diminish the number of judges for any district, or increase or diminish the number of judicial districts and the judges thereof. Section 12 was amended, so as to harmonize with amended section 14, by providing that one or more judges shall be elected in each district. In all other respects these two sections are as originally adopted.

Section 15 has never been amended, and is as follows :

"The judges of the district court first elected shall be chosen at the first general election. The general assembly may provide that, after the year eighteen hundred and seventy-eight, the election of the judges of the supreme, district, and county courts, and the district attorneys, or any of them, shall be on a different day from that on which an election is held for any other purpose, and for that purpose may extend or abridge the term of office of any such officers then holding, but not in any case more than six months.

Until otherwise provided by law, such officers shall be elected at the time of holding the general elections. *The terms of office of all judges of the district court elected in the several districts throughout the state, shall expire on the same day;* and the terms of office of the district attorneys elected in the several districts throughout the state shall, in like manner, expire on the same day."

Section 29, as it originally stood, is as follows :

"All officers provided for in this article, excepting judges of the supreme court, shall respectively reside in the district, county, precinct, city or town for which they may be elected or appointed. Vacancies in elective offices shall be filled by election, but when the unexpired term does not exceed one year the vacancy shall be filled by appointment, as follows : Of judges of the supreme and district courts, by the governor ; of district attorneys, by the judge of the court to which the office appertains, and of all other judicial officers by the board of county commissioners of the county where the vacancy occurs."

The first sentence of the amended section is the same as the first sentence of the original, and from there on the amended section is as follows :

"Vacancies occurring in any of the offices provided for in this article shall be filled by appointment as follows : Of judges of the supreme and district courts, by the governor ; of district attorneys, by the judge of the court of the district for which such attorney was elected ; and of all other judicial officers, by the board of county commissioners of the county wherein the vacancy occurs. Judges of the supreme, district, and county courts appointed under the provisions of this section shall hold office until the next general election and until their successors elected thereat shall be duly qualified."

Mr. Willard Teller, Mr. V. D. Markham, Mr. H. B. O'Reilly, Mr. Caldwell Yeaman, Mr. A. S. Blake and Mr. Thomas Mitchell, for relators.

Mr. J. C. Helm, Messrs. Bartels & Blood, Mr. James H. Brown and Mr. Victor A. Elliott, for respondents.

Mr. Justice Campbell delivered the opinion of the court.

The foregoing are all the specific provisions of the constitution which we deem necessary to set out in full, though others will be referred to in the appropriate place.

We premise by saying that this court has already passed upon a case similar to this, and has given to the provisions of the constitution applicable to the case at bar a construction which, if adhered to now, settles this case in favor of respondents.

If we followed our own inclinations, we would refrain from an extended opinion at this time, and content ourselves by referring with approval to the able opinion by Mr. Justice Elbert in the former case. But the decision in that case was given in response to a request from the governor of the state, under the authority which he has by amended section 3 of article 6 of the constitution, and in one sense may not be as binding a precedent as if rendered in a case litigated by opposing parties. Yet, as a matter of fact, an inspection of the files and record in that case shows that, while the proceeding was *ex parte*, the principal or only brief was filed by the judges then holding office and claiming that their term continued for the full period of six years, which contention is the same as that now urged by the relators.

Most elaborate and exhaustive arguments, both oral and written, and a number of voluntary opinions given by distinguished and able members of the bar of this and other states, have been presented for our consideration, and, considering the premises mentioned, the importance of the question involved, the great public interest which the case carries, and the fact that a precedent should be established in a case where unquestionably both sides appear and the issues involved are fully presented, we have concluded to give to it more consideration than otherwise we would be disposed to do.

If we correctly understand the contention of relators, it is that the term of office of a district judge is, by amended section 12, unvaryingly fixed at six years, and that whenever a district judge is elected by the people, whether at the regular sexennial election for district judges, or at an election to fill the office after the expiration of the term of one appointed to fill a vacancy, or to fill an office provided for in a newly created district, or an office where an additional judge is provided for in an old or existing district, the one so elected holds for the full period of six years.

The theory of respondents is that only such judges as are elected at the regular sexennial election for district judges hold for the full term of six years, and that those elected at any other election hold only from the time of their election until said regular sexennial election occurs, and until their successors are duly elected and qualified.

The propositions into which the arguments of counsel for relators may be conveniently divided are as follows:

*First*. Under the provisions of the constitution which are involved in this case, section 15 was applicable only to those district judges who were elected at the first general election in 1876 (and when section 15 is mentioned in this opinion reference is had to that portion thereof relative to the expiration of the term of office of district judges). Thereafter the conditions were such that nothing could arise upon which the section might operate, and therefore its usefulness and purpose were at an end.

*Second*. Under said original provisions, section 15 still may be considered applicable to all district judges who were elected at any time, especially as section 29 expressly makes mention of unexpired terms in the office of district judges.

*Third*. But after sections 12, 14 and 29 were amended, the uniformity in the election of district judges which was contemplated and intended by article 6 before any amendments were adopted, was destroyed, fractional or unexpired terms in the office of district judges abolished, and section 15 repealed by implication.

*Fourth.* Under the acts of the general assembly passed in pursuance of the authority granted by amended section 14 of article 6 (a) there was no vacancy in the office of district judge of a new district, or in the office of an additional judge in an old one, to be filled before the election thereto of an incumbent; (b) if, however, there is such a vacancy to be filled, then, by virtue of the provisions of amended section 29, it is completely filled by the appointment made by the governor, and after the expiration of the term of the appointee who holds till the next general election, there is no vacancy to be filled, and the one first elected thereafter holds for a full term, and not for any part of a vacancy.

However inconsistent may be the arguments of different counsel for the same party to a suit, if any position assumed is sound it is the duty of the court to select the true and reject the false. This reference is pertinent at the outset, because it will be observed that these four propositions do not altogether harmonize, and the numerous arguments made by the different counsel, and by those who have favored us with their briefs, are not always in harmony as to every contention urged. Our reference, therefore, in this opinion to the arguments advanced by counsel must not in every sense be taken to include all of the counsel for relators. Unless thus understood, it might appear that the same able counsel were presenting inconsistent and self-contradictory arguments on the same proposition, and thus be subject to the charge of inconsistency.

The foregoing is the chronological order, and perhaps the logical order, in which these propositions naturally present themselves. The second and third propositions might properly be included in one statement, and while it will not be possible to keep entirely distinct the first three propositions in the discussion, yet by reason of the conclusion which we have reached it will best subserve our purpose first to consider the second and third propositions in one general discussion, and then in the main to consider the two remaining propositions in at least a partially separate treatment.

I. Relators' argument is not strengthened by reason of anything contained in amended section 12. The only respect .wherein it differs from the original section is in that provision authorizing the election of more than one judge in a given district whenever the general assembly has provided for more than one judge therein. Original section 14 gave to the general assembly the power to increase the number of districts and the judges thereof after the year 1880, but not oftener than once in six years.

From this fact relators would draw the inference that this limitation upon the power of the general assembly to act only once within the period of six years indicated a recognition in this section of the applicability of section 15 to the terms of office of all district judges whenever elected ; but when by amended section 14 all restriction as to time was removed from the legislature, and authority given to increase the number of judges at any session, and as often as it might see fit, this clearly indicated an opposite or contrary recog-.nition, to the effect that section 15 was no longer applicable to any future election. But even a casual reading of the original section will dispel any supposition that original section 14, of itself, was a recognition of any uniformity in the election of district judges. As the sessions of the legislature, under the constitution, come in the odd numbered years, and the regular sexennial election for district judges in successive periods of six years from the year 1876, under the old section, when the legislature provided for an increase of judges, the first election thereof, after the taking effect of the act creating the new office, could not, in the ordinary course of legislation, well be contemporaneous with the said sexennial election. Of course, under the amended section, there could be no identity as to time in such elections.

In all other respects amended sections 12 and 14 are as they were in the original sections, and no support for relators' theory can be drawn from the amendments to either section.

In our view, the only amended section that furnishes any

basis for the third and second propositions advanced by re-
lators is amended section 29.   Original section 29 provided
that all "vacancies in elective offices shall be filled by elec-
tion, but when the unexpired term does not exceed one year,
the vacancy shall be filled by appointment."   The amended
section provides that vacancies in judicial offices "shall be
filled by appointment" and "judges of the * * * district
and county courts appointed under the provisions of this
section shall hold office until the next general election."

It will be observed that the new section omits the clause
of the old as to unexpired terms, and from this it is said
(which is undoubtedly true) that some intention must be
imputed to such omission.   By a most ingenious argument
relators claim that in making this omission the intention of
the people when the amendment was adopted clearly was to
do away with all fractional terms in the office of district
judge and make all elective terms therein a full term of six
years.   For, say relators, if there had been the intention still
to preserve a fractional term, it would have been easy to
express that desire by retaining the provision to that effect,
or by the employment of language similar thereto in meaning.

But the object of this amendment has been considered by
this court in the case of *People ex rel. Livesay v. Wright*, 6
Colo. 92, where it is said: "Under this repealed section
(29), whenever a vacancy occurred in any elective judicial
office, and the unexpired term exceeded one year, it became
necessary to call and hold a special election to fill the
vacancy.   The chief, if not the only, object of the amend-
ment, was to obviate the expense and inconvenience of such
special elections."

If such was the object, and the only one, as it seems to us
it was, then there was no intention on the part of the
people in omitting the language in question, such as is
claimed by relators.   Under the original section, if the
vacancy was for less than one year, it was filled by appoint-
ment; if for more than one year, by election.   The unex-
pired term of a district judge referred to in original section

29 existed, not because of its recognition in that section, but evidently because the full term of six years prescribed in section 12 was necessarily limited in every case where the incumbent held under an election occurring at any time other than the regular sexennial election ; so that in such cases the full term of six years was qualified by section 15. The use of the words " unexpired term " in original section 29 did not make of the term of a district judge two classes or kinds, viz. a full term and a fractional term ; but the use of such words therein was merely a recognition of such classes made necessary by the other two sections named, and original section 29 merely provided how the unexpired terms should be filled whenever the contingencies happened which gave rise to them, and not that there should be full terms and unexpired terms in the office.

This being so, when section 29 was amended for the objects stated above, there was no longer any reason for retaining the words " when the unexpired term does not exceed one year." The unexpired term of such office was not intended to be destroyed, but it would exist thereafter as well as before whenever an election was held at any other time than at the sexennial election. The amendment, therefore, was made not to abolish fractional terms, but to do away with special elections, and thus change the manner of filling vacancies in a term, and by so doing the continued existence of a vacancy and fractional and full terms was recognized.

II. Much of what has been elsewhere said is applicable to the first proposition, but we proceed now to a separate consideration of the same. By laying special emphasis upon section 12 as entirely disconnected, relators insist that every term of a district judge who is elected to the office must be for the full term of six years. Of course, this applies to the district judges elected at the first election. Section 15, say the relators, applies only to such judges, or if it does not, then section 12 must, in certain cases, be qualified and limited.

Indeed, the terms of the district judges first elected might not be of the same length, although section 12 unqualifiedly fixed the term at six years; for by section 6 of the schedule the terms of the district judges were made to begin from the filing of their respective oaths of office. The constitution being silent upon this subject, it is strictly the exercise of a legislative power to fix the beginning of the regular terms of those judges elected at all subsequent elections. This the legislature did (sec. 936, Laws of 1877) and made the regular terms of district judges begin on the second Tuesday of January next after their election. Therefore the term of office of the district judges first elected began when they filed their respective oaths of office, and ended on the second Tuesday of January next after the sexennial election for district judges in the year 1882; and if section 12 is to be taken without reference to any other kindred provision, we see that it is not applicable even to the district judges first elected. This merely serves to emphasize the point that it is necessary for all the kindred provisions of the constitution to be construed together.

But we say that these original sections must be construed together. It is conceded by all the counsel that fractional terms still exist in the office of supreme judges, but section 7 of article 6 expressly provides that the term of office of a supreme judge shall be nine years, except as otherwise provided in that article. The only exception therein provided is as to the judges elected at the first election in 1876, who, by virtue of section 8 of article 6, are so classified that one shall go out of office every three years. That this latter section may be so allowed to operate, section 7 is qualified whenever a supreme judge is elected to fill a vacancy in the term, or in the office, of any supreme judge. The reason for this concession is so well stated in the case of *Simpson v. Willard*, 14 S. C. 208, that we quote it in full.

First, however, we should state that, prior to this decision, the same court had held that whenever one is elected to fill a casual vacancy in the office of clerk of the court of common

pleas, he holds, not for the unexpired term, but for a full term of four years, because it must be controlled by the imperative mandate of section 13 of article 4 of the constitution of South Carolina, which declares that such clerk when elected shall hold his office for a term of four years, and there was no other provision bearing upon the question. The language of the court as to the point now before us is:

"But in the case of a casual vacancy in the office of justice of the supreme court, whether chief or associate, the rule is different, because the provision fixing their term of office at six years must, necessarily, be qualified by that other provision in the same section which requires that they shall be so classified as that one of them must go out of office every two years; otherwise, this latter provision would be entirely defeated. · Hence, in filling a casual vacancy in the office of justice of the supreme court, it must be so done as not to disturb this essential feature of classification stamped upon that tribunal by the constitution. Manifestly this can only be effectually preserved by filling casual vacancies for the unexpired term only."

The same reasoning applicable to such a vacancy in the office of a district judge under our constitution is equally pertinent. Section 15 expressly provides that the term of office of all district judges who are elected shall expire on the same day. This provision cannot be preserved unless district judges who are elected to fill a vacancy created by the resignation of an incumbent of an existing office, or those who are appointed to fill a newly created office, or who are elected at the first election after the creation of a new office or a new district, in the one case, hold for an unexpired term, full or fractional, as the case may be, and, in the other, for a fractional term only.

III. By counsel on both sides much learning has been displayed, and many fine distinctions drawn, as to the meaning of " term," " office," " incumbent," " term of office " and "vacancy," but we consider the discussion neither very important nor helpful. It is sufficient to say that " term of office '

as used here means the period or limit of time during which the incumbent is permitted to hold. "Vacancy" applies not to the incumbent, but to the term, or to the office, or both, whether to the term, or to the office, or both, depending generally upon the context.

In this connection the position assumed by relators as to this branch of the case is as follows:

(1) Where, as counsel express it, a new office is created by the legislature, and there is given in the act creating the office authority for the filling thereof by an appointment at the hands of the governor, to hold until the next general election, when the governor makes the appointment he acts as the agent of the legislature, and not by virtue of the authority vested in him by amended section 29 of the constitution, which latter provision gives him the power only to fill "vacancies" in the office of a district judge. The office, say relators, exists as soon as the act takes effect, but as elective offices (except only in case of designated vacancies) are to be filled by election by the people, the term of the office does not begin until an incumbent occupies it under an election. The holding of the appointee is no part of the term of the office, but a sort of nondescript.

(2) If, however, the time between the taking effect of the act, when the existence of the office begins, and the first election is a vacancy to be filled by the governor under his constitutional prerogative, then, when he makes the appointment, the vacancy is completely filled, and the first election thereafter is to fill the office for a regular or full term thereof.

Under the conclusion reached by us upon the third general proposition, it does not become necessary fully to discuss or determine these somewhat metaphysical questions. It really is not material what appellation should be given to the holding of one who is appointed to fill an office empty by the resignation or death of a former incumbent, or to the holding of one elected to the office at the first election after a new office has been established, as the successor of, and at the expiration of the holding of, an appointee. Whether

such be, in the first instance, the filling of a vacancy (in the strictest sense) in a regular term, or an unexpired term, or, in the second instance, the filling of a fractional or a partial term, the result, in so far as the time which such an incumbent holds is concerned, is just the same; because, by our conclusion heretofore reached, that section 15 is to be construed along with section 12, the effect of the two sections together creates a regular, or full term, and a fractional term in the office of a district judge.

The tenure of office, or the holding, of such appointee and such incumbent, under election, is necessarily fixed by such conclusion. The holding of the appointee by the express provisions of the act creating the office is limited to the next ensuing election, and the holding of the one elected thereat, as a successor of such appointee, by the construction which we have placed upon amended sections 12 and 15, is only until the next ensuing sexennial election; so it is immaterial what designation is given to such holding, so long as the length of the term of both is necessarily fixed for such length of time, as we have elsewhere herein declared.

In amended section 29 there is no specific provision as to the character of the holding of one elected to succeed an appointee to fill a vacancy; but, as we have said, the construction placed upon amended sections 12 and 15 necessarily gives rise to a full and fractional term in the office of a district judge, and makes such holding of the appointee a portion of a fractional term, and the holding of the one elected to succeed the appointee a holding for the balance of such fractional term, or a holding of the entire portion of such fractional term, whenever such election is not the regular sexennial election.

But, if necessary, it might well be established, in the absence of the construction which we have placed upon amended sections 12 and 15, that the term of the appointee in such case is the filling of a vacancy, under the principle established in the case of *The People ex rel. Tucker v. Rucker*, 5 Colo. 455, and that the holding of an incumbent under the

first election is for an unexpired fractional term, the first part of which has been filled by the appointee; just as where one duly elected for a full term of six years resigns his office less than one year prior to the next ensuing sexennial election, and the governor makes an appointment to fill the vacancy, this full term of six years is made up of the holding of the elected incumbent, which holding is for a fractional term, or part of a term, and the holding of the appointee, which is the filling of the vacancy in an unexpired full term.

At the risk of some repetition, which cannot well be avoided, our position can be made clearer by a comparison of the status and tenure of office of judges of the supreme and county courts with those of the district courts. Precisely the same provision exists in amended section 29 for filling vacancies in the office of supreme and county judges as for district judges, and the appointee in such case holds for the same time and under the same conditions, and there is the same absence from the section of any designation of the holding of judges elected as successors of the appointee. If, however, the vacancy in the one case is completely filled by the appointee at the hands of the governor, the same result follows as to each of the other two.

The section reads that vacancies in all of the offices shall be filled by appointment. But relators wish to confine this language to the one office of district judge, but say that it is inapplicable to the office of supreme judge or county judge because, in the former case, of another provision of the constitution, viz. section 8 of article 6, which provides for a classification of the office of the supreme court judges so that one judge shall go out of office every three years, and in the case of county judges, by reason of section 22 of article 6, which provides that at the general election in 1877, and every three years thereafter, there shall be elected at the general election a county judge, except as otherwise provided in article 6; which sections, relators contend, necessarily restrict and limit this particular provision of amended section

29 so that it may comply with said sections 8 and 22, and, amended section 29 being thus limited, these two sections will thus be permitted to stand.

We think this is true, and we think it equally true that the same limitation is put upon this same provision of amended section 29 by reason of that part of section 15 which requires that the terms of all the judges of the district court elected in the several districts throughout the state shall expire on the same day; and that in each case, if amended section 29 is to be taken with the limitations imposed by sections 8 and 22, so that the fractional or unexpired terms, as the case may be, still exist in the case of supreme and county judges, so section 15 still operates and has that effect necessarily upon the term of office of a district judge, which by section 12 is fixed at six years.

But, say relators, while we concede that, were it not for amended section 29, section 15 would have that effect upon original section 12, yet as sections 12, 14 and 29 have been amended, they must be taken as the latest expressions of the will of the people; and if, to give them and each of them full effect, some of the provisions of the constitution as originally adopted must yield, then such construction must be placed upon them by this court.

We concede the rule of construction urged, and that, if there is a necessary conflict between these sections as amended and section 15 of the constitution as originally adopted, the latter must yield. There are, however, other rules of construction equally as binding, one of which is that each provision of the constitution, both original and amended, should, if possible, be so construed as to avoid any conflict between the different parts of the constitution. Another rule is that effect must be given, if possible, to every provision and every clause and all of the language of a constitution, if possibly this can be done. If harmony can be preserved, that construction which will accomplish that result is to be preferred to that construction which will necessarily bring conflict.

We submit, in the first place, that if amended section 29 destroys fractional or unexpired terms in the office of a district judge, and enables all who are, at any election, elected to such office to hold for a full term of six years, such a result is accomplished by the omission of the words " unexpired term " in the amended section.   If the effect of such omission, therefore, thus operates as to the office of a district judge, it applies equally to that of a supreme or county judge. If the presence of these words in the original section was what made fractional and full terms in the office of a district judge, so their presence had the same effect as to the office of a supreme and a county judge.   But we hold that these words do not, in either case, produce the result contended for by relators.   As heretofore shown, their presence in the original section merely recognized a condition which existed in the term of office of a supreme judge by reason of section 8 of article 6, which classified the judges first elected into three classes, and in the term of office of a district judge, which exists by reason of section 15 limiting section 12, and their presence in original section 29, or omission in the amended section, neither in the one case creates, nor in the other destroys, the fact of the existence of fractional and full terms, which fact existed independent of the provisions of either the original or amended section.

But relators concede that amended section 29 does not repeal by implication either section 8 or section 22 of article 6 ; and we hold for a reason equally potent that it does not in that regard affect, or by implication repeal, section 15.

In the case of an appointee to a vacancy in the office of supreme or county judge, he holds only till the next ensuing general election.   At that election, if not the regular election recurring in the one case once every nine years, and in the other every three years, the one elected holds, not for the full period of nine years in the one case or three years in the other, but only till the expiration of that term during which the vacancy occurred.   If the vacancy, however, in the office of a district judge is thus filled, the relators still insist that

the one elected holds for the full period of six years, because, in the first place, the vacancy is completely filled by the appointee, and no part of an unexpired term thereafter remains; and, secondly, because section 12 absolutely fixes the term at six years. If that is so as to a district judge, a similar result must follow as to a supreme judge and county judge, in so far as the provisions of amended section 29 bear upon this question. But if it is inapplicable to the case of a supreme judge or county judge, it is so by reason of the provisions of sections 8 and 22; and the same result may also ensue in the case of a district judge, if there are other provisions of the constitution applicable, and we hold that section 15 does necessarily produce such a result as applicable to amended section 12. The supreme judges cannot retire one every three years unless section 7 is made to yield to or harmonize with section 8 (and neither section 8 nor section 22 has ever been amended); or, to be more accurate, sections 7 and 8 should be so construed that there may not be any conflict between them. The terms of all the district judges cannot expire on the same day unless amended section 12 is construed in harmony and in connection with section 15, so that only district judges elected at the sexennial election shall hold for six years, and those elected at any other election hold for a fractional or unexpired term.

If, however, we concede that amended section 29, being later in time, repeals section 15 in so far as the latter purports to limit the full term of six years provided for in amended section 12, so, also, does it repeal sections 8 and 22 in so far as concerns the requirement in the former section that supreme judges shall retire one every three years, and in the latter section that a county judge shall be elected once every three years; but we hold that neither section 8, 22, nor 15 is thus repealed by implication. These four sections of article 6 can be made to harmonize, and neither of the other three can be said to repealed by implication by amended section 29.

Repeals by implication are not favored; and we must not

presume, unless the language imperatively demands it, that the people intended to repeal by implication these important sections of article 6, especially when all the sections of the same article may at the same session of the legislature be submitted to the people for amendment, and the people could have expressly repealed or amended these other three sections of this article, had such been their purpose, at the same time that they amended section 29.

It is as rational and as logical thus to harmonize amended sections 12 and 29 with section 15 as it is to harmonize amended section 29 and section 7 with sections 8 and 22. If amended section 29 conflicts with section 15, it certainly does with sections 8 and 22, and being the latest in time, sections 15, 8, and 22 must give way in so far as they are inconsistent with the later expression of the will of the people.

But, we repeat again, relators disavow any such contention as to such an effect of amended section 29 upon sections 8 and 22, and we hold that there is no such conflict with section 15.

Again, the relators urge with much earnestness that this court should not put upon section 12 a construction that will in any conceivable case be a limitation of the term of office of a district judge therein fixed at six years, even though such limitation would not affect the length of the term when the election comes at the regular sexennial election. They strenuously insist that no construction shall be made that would qualify or limit this clause, " whose term of office shall be six years," which, they assert, is the strongest in the whole group. Just why it is the strongest we are not told, except the mere fact of the assertion. Possibly it is the strongest in the section; but we certainly can perceive no reason why it is any stronger than that portion of section 15 which declares that the terms of all district judges elected shall expire on the same day, or of section 7 which provides that the term of supreme judges shall be nine years.

But while we are asked not to place any limitation upon the full effect of these words in amended section 12 in their

application to one whenever he is elected by the people, we are asked in the same breath to hold for naught and entirely disregard in every conceivable case the words which are found in section 15 that require the term of all district judges to expire on the same day. Evidently we are thus strongly admonished because, unless section 15 shall be disregarded by us and held to be repealed by implication, relators appreciate the fact that the necessary effect of such words will be to limit the term of office of district judges to less than six years whenever the election comes other than at the time of the regular sexennial election.

But giving to the respective arguments equal merit as abstract propositions, it is the duty of the court to give to these different sections that construction which will most nearly produce that harmony and uniformity in the election of district judges which appears throughout article 6 to have been the desire of the framers of our organic act. The least friction will ensue by holding that the provisions of amended section 12 as to the length of the term must give way to, section 15 in all cases where the election of a district judge occurs at any other election than at the one or ones at intervals of six years beginning with the first general election in this state for district judges. In other words, after, as well as before, the adoption of the three amended sections named, the term of office of a district judge is, *first*, for the full term of six years, whenever he is elected at the so-called sexennial election, and thus section 12 is given full expression ; *second*, when he is elected at any other election he holds only till the next sexennial election, and section 12 is restricted by section 15.

In this connection we deem it fitting to notice one argument most ably and skillfully urged upon us at the hearing. We were reminded that to the federal courts judges are appointed by the president to hold for life or during good behavior. In many of the older states at first, and in some of them still, judges are appointed by the governor or the legislature with the like tenure of office. When the members

of our constitutional convention came to the judiciary article, two methods of selecting the judges confronted them,—one by election, the other by appointment. We must suppose that the relative merits of these two systems were thoroughly discussed and investigated by the members of that body, and while they were mindful of, and fully impressed with, the advantages which many of our statesmen and publicists think are in favor of the method by appointment, still, for reasons which were deemed satisfactory at the time to those upon whom rested the duty to select, there was adopted into our constitution the method of selecting judges by the vote of the people.

When this method was adopted and the other rejected, some of the advantages which attended long terms secured by appointment were preserved by inserting in the constitution provisions for a reasonably long term of office, and this notion, we are told, doubtless actuated the framers of our constitution, as appears from their address to the people :

"Experience having shown frequent changes of the judiciary to be unwise and detrimental to the public interests, long terms are prescribed for the judges of these courts. The judges of the district courts will be elected for six, and those of the supreme court for nine years ; and after the first election they may be elected on a different day from that on which an election is held for any other purpose, thus taking judicial elections out of the arena of party politics."

(It will be observed that this address refers to six years for district judges and nine years for supreme judges ; and while the discussion would be more appropriate elsewhere in this opinion, the insertion of this extract here gives us the opportunity to reply to the argument of relators that when the address speaks of the term of district judges as six years this is an additional reason for supposing that it was intended to apply to a district judge whenever elected. The address, however, speaks of the term of a judge of the supreme court as nine years, but even relators would concede that this language cannot be taken to support the con-

tention that in every case where a supreme judge is elected
he holds for nine years.)

We realize the potency of this argument as to the duty of
courts to execute the intention of the people in adopting a
constitution, and recognize that in case of serious doubt ex-
trinsic aids of different kinds—the condition of affairs exist-
ing at the time of the adoption of the constitution, the
practice theretofore prevailing, and even arbitrary. rules—
may be resorted to in construing a constitution; but where
on consideration of the language of the various parts of the
instrument the interpretation is plain or the construction
imperative, we must exclude all such extrinsic aids, even
though in a given case the construction may be in some re-
spects different from what we believe may have been the
intention of the people in adopting it.

But we do not have to go to any such length in this case.
We must suppose, if the intention of the people was to in-
terfere with the harmony and uniformity in the election of
district judges, which even a casual reading of article 6 re-
veals must have actuated them, that such intention would
have been clearly manifested by language unambiguous and
explicit, and that they would not deliberately have destroyed
such harmony and uniformity which they had evidently been
at such pains to create, by providing that a district judge
whenever elected should hold for a term of six years, when,
if so holding, it is impossible for any effect to be given to
the provisions of section 15. They certainly would not have
left to doubtful inference so important a manifestation of
that intention, and we cannot believe that any such effect,
in any case, should be given to any provision of amended
section 29 in the absence of a clause coupled therewith con-
taining an express repeal of that portion of section 15 in
question. We are not concerned with the wisdom of this
desire for uniformity, nor with its alleged unimportance as
compared with the advantages of a reasonably long term of
office. The intention is present in the constitution, and we
must respect it and carry it out, if possible.

IV. Thus far we have endeavored to answer the arguments of relators' counsel by the application of those sound and wholesome canons of constitutional construction recognized by many respectable courts and many leading text writers to show that the construction which they ask us to place upon these sections of the constitution which, they claim, apply to the facts of this case, cannot be recognized by this court. The many authorities from *People v. Green*, 2 Wend. 266, down to the latest case cited upon the main question involved we do not wish to question, or intimate that they are not good law under the facts of those cases, and in the states where they arose. They may be disposed of not summarily, but briefly, by stating that they hold that where a term of an elective office is fixed by the constitution of a state at a certain period, and no beginning or ending of the term is established by the constitution, and where there is no other clause in the constitution providing to the contrary, and no authority exists in the legislature for so fixing the beginning or ending of the term, or where such authority does rest in the legislature, and the legislature has not exercised it, then, whenever there is an election to that office, the incumbent holds for the full term of that office, whether he is elected to fill a vacancy or otherwise. In no case brought to our attention, except in Mississippi and Virginia, does there exist in the constitution of any state a provision the same as, or even similar to, the clause in section 15 of article 6 of our constitution, which we have mentioned, and there the decisions are in harmony with our conclusion here.

So that, without reviewing those cases, and thereby prolonging this opinion, already too long, and with full recognition of such cases as declare a doctrine different from that which we announce in this case, and conceding their applicability in the states and under the constitutions where they were promulgated, at the same time we insist that they cannot be recognized as authority in this state for the reason that our own constitution must be our guide, and it essen-

tially differs from the constitutional provisions construed in the cases cited.

V. But in addition to what we have already said, there remains to be considered last, but of great importance, what was referred to in the beginning of this opinion. This court, in the case *In re Election of District Judges*, 11 Colo. 377, in principle has passed upon the very question at issue here. We are not unmindful of the rule that the maxim *stare decisis* is applicable in its fullest sense only where property rights are involved. The doctrine, however, applies to constitutions as well as to statutory law, or to any other kind of law. The only question is as to what extent in a given case shall the doctrine be allowed to prevail? The following from Thompson on Negligence, vol. 2, p. 1005, substantially accords with our view of the rule:

In the case of *Schultz v. Pacific R. R. Co.*, 36 Mo. 13, the court gave to the statute of that state a construction different from what it had theretofore received from the same court, and Judge Thompson, commenting on this, says:

"Perhaps on a question of this kind a law writer ought not to say anything. We feel constrained, however, to express the opinion, notwithstanding the deference which is due to the learned and accomplished judge who delivered the opinion in the *Schultz Case*, that when the question was before the court for the first time, a contrary conclusion from that arrived at would have been more in conformity with the rule of statutory construction that the legislature will not be held to intend a repeal of the settled rules of the common law, unless the language employed by it clearly imports such an intention. But a rule of construction which certainly did not do violence to the terms of the statute having been agreed upon by a unanimous bench, and acquiesced in by successive legislatures for eleven years, its abrogation by the judicial bench, by a decision which necessarily had the effect of a retroactive law, operating upon all pending suits and upon all existing injuries, was an indefensible violation of the rule of *stare decisis*. We think that the con-

cluding observation in the dissenting opinion of Henry, J., should have had sufficient weight to restrain the action taken by the majority of the court: ' While that decision (referring to the *Schultz Case*) strictly was not made a rule of property, yet the doctrine of that case has so long prevailed as to become a recognized law of the land; and if it work any injustice, or contravene public policy, it is better for the legislature to remedy an evil by amending or repealing the law, than for this court to do it by judicial construction.' " 2 Thompson on Negligence, p. 1005.

While the decision in the 11 Colorado is not as binding upon this court as it might be if thereby a law or, rule of property had been established, yet it has been the unquestioned law of this state now for more than seven years. It is well considered, well conceived, concise, and based upon reason. Aside from this, district judges have been elected and have gone out of office according to its holding. The people in their party conventions have yielded to it their obedience. The executive and legislative departments of the government have followed it, and calls for elections have repeatedly since that time been made to comply with its rule. The relators themselves have acquired whatever rights they may have to this office long since this decision was announced, and, as evidenced by the manner in which they entered upon the discharge of the duties of their office as soon after their elections as they could conveniently qualify, have indicated, and by their retiring from office and submitting to an election before the expiration of six years from the time of their election, again have recognized its controlling authority.

To be sure, relators are probably not technically, or otherwise, estopped to question the soundness of this decision, if it is wrong, but such recognition by them is one, among many other circumstances, to show that all classes of our people have given their assent to this case.

Before, as well as since, this decision was announced; the legislative and executive departments of the government have recognized that the .rule which it announced was the

proper one to give to the constitutional provisions in question, and every act of the legislature which has come under our observation bearing in any way upon this question has been passed upon the assumption that the rule thereby established was the correct one. At the first session the general assembly (sec. 933, Laws of 1877) enacted that a district judge should be elected in each judicial district at the general election in 1882, and every sixth year thereafter, and there could be no more expressive recognition of fractional and full terms in the office than this, when considered with section 15. In these acts which created the offices to which relators were elected, the governor was to appoint " as in case of vacancy," clearly indicating the notion the legislature had of the term which the appointee was to hold. The same intention is also apparent in sections 935, 936 and 938 of the General Laws of 1877.

Constructions of the constitution by the legislative and executive departments of government, particularly by the legislature, and when made contemporaneously with the adoption of the constitution or soon thereafter, weigh strongly with the courts. Of course, we know that the construction of the constitution by all the people and by every other department of the government is not absolutely controlling with the courts; it is only the construction which the latter themselves declare that ultimately prevails and is decisive; but all these constructions made by members of these coordinate departments of government, acting under oath and from the desire, as we must assume, to do their duty, are persuasive reasons and do have weight with the courts, in reaching their conclusions, greater or less, depending upon the circumstances of the particular case.

For the reasons given above, we have no hesitation in declaring that the respondents are entitled to the office of district judges in the second judicial district of this state ; and in accordance with such conclusion the proceeding instituted by the relators is dismissed at their costs.

MR. JUSTICE GODDARD dissents.